UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| FREDRICK B. LLOYD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 3:15-cv-624-RLM-MGG |
| | ) |
| MAYOR, CITY OF PERU, *et al.*, | ) |
| | ) |
| Defendants. | ) |

OPINION AND ORDER

Fredrick Lloyd, former police officer for the Peru Police Department, was terminated from his employment on April 3, 2015 for multiple disciplinary violations. Mr. Lloyd filed this suit against the Mayor of the City of Peru and the Chief of the Peru Police Department, alleging claims of race and age discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*; Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981; and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 622, 623(a). The defendants moved for summary judgment with respect to all claims. The court grants the motion.

I. BACKGROUND

Mr. Lloyd was a patrol officer with the police department from 2003 until his termination in 2015. Mr. Lloyd was terminated based on a Discipline Matrix that sets forth violation levels for when an officer commits a violation.

The record shows that Mr. Lloyd has violations going back to 2008. In July of that year, Mr. Lloyd was reprimanded for running an Indiana Data and Communications System ("IDACS") III inquiry on himself, after receiving a Notice of Violation from IDACS. Two years later, Assistant Chief Steve Hoover gave Mr. Lloyd a written reprimand and suspended his take-home car privileges because Mr. Lloyd took his marked police vehicle outside of Miami County.

Mr. Lloyd's violations become more frequent in the years leading up to his termination. On September 16, 2013, Assistant Chief Rick Keller had given Mr. Lloyd a written reprimand for being late to a mandatory firearms training. On November 20, 2013, Lt. Michael Meeks had given Mr. Lloyd a verbal reprimand for having a negative balance on his comp time. On August 18, 2014, Assistant Chief Keller issued Mr. Lloyd a written reprimand on missing a mandatory training.

In September 2014, Mr. Lloyd made allegations that some members of the police department were engaging in illegal activities. City Attorney Bill Berkshire encouraged Mr. Lloyd to report any criminal activity to the Indiana State Police immediately. Mr. Lloyd was ordered to appear before the Board of Works on October 1, 2014 to present the evidence that he had for the Board's review. At that hearing, Mr. Lloyd allegedly questioned the Board's authority, provided a stack of papers that he claimed showed criminal activity, and confirmed that the evidence was in the stack of papers. The Board ordered Mr. Lloyd to submit any additional evidence by October 10, 2014; Mr. Lloyd didn't

produce any. In reviewing the papers he had provided, the Board concluded that Mr. Lloyd's allegations of criminal conduct were unfounded. Mr. Lloyd was suspended for violation of a policy that involves an act amounting to misuse of authority or ethical offense and/or that creates or poses a potential for a clear serious adverse impact on public safety or the professional image of the department, as well as a Class D offense for conduct unbecoming an officer for making unfounded allegations in a public forum about other officers.

Mr. Lloyd was given another five-day suspension on December 8, 2014, for several offenses: falsifying a report, two counts of conduct unbecoming an officer for lying regarding his shift and the inventory form, disobeying a direct order and being absent from work without authorization for leaving his shift two hours early, and failing to comply with a general order for failing to file an inventory form.

On January 26, 2015, Mr. Lloyd was subpoenaed for a deposition in the Miami County Public Defender's Office and didn't appear. Mr. Lloyd sent an e-mail to Officer Rick Keller on January 30, 2015 saying he had made contact with the Prosecutor's office in regard to how his testimony would impact the case that was not his own and that he asked for an alternate date but couldn't say to whom he spoke. The defendants say that Mr. Lloyd never contacted the prosecutor. This constituted conduct unbecoming an officer and failure to appear for deposition in violation of the police department's general orders.

On March 4, 2015, Mr. Lloyd had a confrontation with a supervising officer after he was asked to return the AR-15 rifle that had been issued to him.

Mr. Lloyd was reprimanded for violating a policy that involves an act amounting to misuse of authority or ethical offense and/or that creates or poses a potential for a clear serious adverse impact on public safety or the professional image of the department, as well as a Class D offense for conduct unbecoming an officer.

After the January 26, 2015 and March 4, 2015 incidents, Chief Raney recommended Mr. Lloyd's termination to the Board of Works because Mr. Lloyd was at level 15 on the Discipline Matrix, and termination is the presumptive sanction at level 8. Mr. Lloyd was placed on administrative leave beginning March 9, 2015. The Board held a hearing on April 3, 2015 at Mr. Lloyd's request. Mr. Lloyd appeared but refused to enter the hearing or participate. The board held the hearing and voted to terminate Mr. Lloyd. The Board issued findings of fact and conclusions of law on its decision to terminate based on his accumulation of discipline under the Discipline Matrix. On the same day, four white male officers were also terminated based on Chief Raney's recommendations in addition to Mr. Lloyd-Jules Buffington, Bill Wood, Jason Ballard and Sam Finnegan. A fifth white, male officer, Greg Martin, was terminated based on Chief Steve Hoover's recommendation.

Mr. Lloyd disputes this version of the events. Mr. Lloyd says he wasn't properly notified about the hearing and was searched before the start of the hearing; no other officer similarly situated was treated that way. Mr. Lloyd says he didn't attend the hearing in fear that he would be publicly humiliated.

Mr. Lloyd says that after he protested that he was being treated unfairly, he was subjected to disparate treatment and retaliation, a pattern or practice of discrimination involving a hostile work environment, threats of disciplinary action, formal disciplinary action, exclusion from training, lack of opportunity or consideration for promotion, suspension from employment without pay, and ultimately, wrongful termination. In addition, he says, the police department didn't follow its progressive plan in the discipline and termination of Mr. Lloyd's employment.

Mr. Lloyd says that all of the managers to whom he reported at the police department were of European descent, and Mr. Lloyd was the only person of African-American descent employed as a police officer. Mr. Lloyd further noted that after his termination, the police department hired several new employees, all of whom were males of European descent under forty years old.

Mr. Lloyd says that during the course of his eleven years of employment with the police department, his job performance and attendance was either better than or no worse than that of other employees who didn't oppose discriminatory practices, who weren't of African American descent, or who weren't older than forty years old. Mr. Lloyd says he didn't receive sufficient notice that his job was in jeopardy, and wasn't given an opportunity to correct his wrongs before being suspended, then terminated, from employment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, 477 U.S. at 255; Weigle v. SPX Corp., 729 F.3d 724, 730 (7th Cir. 2013). The existence of an alleged factual dispute, by itself, won't defeat a summary judgment motion; "instead, the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); see also FED. R. CIV. P. 56(e)(2). "[S]ummary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005)).

## III. DISCUSSION

In viewing the evidence in the light most favorable to Mr. Lloyd and drawing all reasonable inferences in his favor, the record doesn't support evidence of wrongful termination, discrimination or retaliation.

Retaliation claims under Title VII can be proven either directly or indirectly. To survive a summary judgment motion using the direct method, "the plaintiff must present direct evidence of (1) a statutorily protected activity; (2) an adverse employment action taken by the employer; and (3) a causal connection between the two." Davis v. Con-Way Transp. Cent. Express, Inc., 368 F.3d 776, 786 (7th Cir. 2004) (*quoting* Sitar v. Ind. Dep't of Transp., 344 F.3d 720, 728 (7th Cir. 2003) (*citing* Stone v. City of Indianapolis Pub. Utils. Div., 281 F.3d 640, 644 (7th Cir.), cert. denied, 537 U.S. 879, (2002))). "Direct evidence" is defined the same for discrimination and retaliation claims-that is, it can be an admission of intentional discrimination or a "mosaic" of circumstantial evidence that directly points to a discriminatory intent. *See* Volovsek v. Wisconsin Dep't of Agr., Trade & Consumer Prot., 344 F.3d 680, 689-90 (7th Cir. 2003) (*citing* Troupe v. May Dep't Stores, 20 F.3d 734, 736 (7th Cir.1994)).

Mr. Lloyd hasn't presented a direct evidence case from which a reasonable trier of fact could find in his favor on either the race discrimination or the age discrimination claims. The race discrimination case is stronger because of Chief Raney's using the term "boy" when talking to then-Officer Lloyd. "Boy" is a racial slur when directed at an African-American male, *see*

Ash v. Tyson Foods, Inc., 546 U.S. 454, 456 (2006), but the term alone isn't enough to amount to a convincing mosaic that can get the race discrimination claim to a jury. The remark wasn't made in connection with the decision to terminate Mr. Lloyd's employment, and while Chief Raney can be seen as a decision-maker who recommended termination to the Board of Works, the record shows that other supervisors imposed nearly all of the discipline that led to Mr. Lloyd reaching a score of 15 when 8 is enough for termination. So without the court's meaning to diminish how offensive and humiliating it is for a white person to use that term when dressing down an African-American male, "boy" would be only a "stray remark" under today's understanding of the law.

Mr. Lloyd can't get to the jury through an indirect method analysis, either. Under the burden-shifting analysis in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a plaintiff claiming discrimination under Title VII must first establish a prima facie case of discrimination by demonstrating that: (1) he is a member of a protected class; (2) he met his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class received more favorable treatment. Keeton v. Morningstar, Inc., 667 F.3d 877, 885 (7th Cir. 2012). If the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the employer to offer a non-discriminatory reason for the adverse employment action. Id. If the employer does so, the burden shifts back to the plaintiff to submit evidence demonstrating that the employer's explanation is a

pretext. Id. Although the question of pretext normally arises only after the plaintiff has established a prima facie case of discrimination and the employer has countered with a legitimate non-discriminatory reason for the adverse action, the court may skip over the initial burden-shifting of the indirect method and focus on the question of pretext. Id.

The Mayor correctly asserts that an employee's own assessment of his qualifications and performance ordinarily don't tell the court — or a reasonable trier of fact — anything about the employer's assessment. Chief Meeks testified that Mr. Lloyd had several good qualities that could have made him a good officer, but the court must examine whether a reasonable trier of fact, viewing the evidence and all reasonable inferences in Mr. Lloyd's favor, could find that Mr. Lloyd was meeting the police department's legitimate job expectations. The court must focus on the plaintiff's performance at the time of his termination because," 'the fact that an individual may have been qualified in the past does not mean he is qualified at a later time.' " Karazanos v. Navistar Int'l Transp. Corp., 948 F.2d 332, 336 (7th Cir. 1991) (*quoting* Grohs v. Gold Bond Bldg. Prods., 859 F.2d 1283, 1287 (7th Cir.1988)); *see also* Hong v. Children's Mem'l Hosp., 993 F.2d 1257, 1262 (7th Cir. 1993) ("[t]his court will 'not sit as a super-personnel department that reexamines an entity's business decisions' in cases where discrimination is alleged."). Mr. Lloyd's reaching 15 disciplinary points in the latter years of his employment would keep any reasonable trier of fact from making such a finding.

Even if Mr. Lloyd were able to get over that hurdle, no reasonable trier of fact could find that officers outside of the protected class were treated more favorably. The comparators Mr. Lloyd lists were all white, though the court missed any references to their ages. They engaged in some conduct that could be seen as just as bad as Mr. Lloyd. In fact, one comparator was terminated after only a single violation. The record doesn't show that a reasonable trier of fact could find that the police department couldn't have believed the comparators' conduct wasn't worse than that of Mr. Lloyd's. Most significantly, those comparators were all fired, just as Mr. Lloyd was, so it's hard to say they were treated better than Mr. Lloyd.

Lastly, it appears that the Mayor and the police department had a non-discriminatory reason to terminate Mr. Lloyd. The pretext burden requires that a plaintiff show more than a disagreement with his employer's assessment of whether he has met the legitimate expectations of employment as the reason for discharge; rather, he must show evidence that the employer lied about its reasons for firing the plaintiff. Hill v. Tangherlini, 2013 WL 3942935 (7th Cir. 2013).

With a discipline level that easily surpassed the presumptive termination sanction, Mr. Lloyd hasn't come forth with evidence from which a reasonable trier of fact could decide that the police department lied about its reasons for firing. In addition, a plaintiff's self-serving statements about his ability and disagreements with his employer's evaluation of his performance are insufficient to create an issue of material fact or proof of pretext. *See* Gustovich

v. AT&T Communications, Inc., 972 F.2d 845, 848 (7th Cir. 1992). Even if the court skipped the other burden-shifting factors to focus solely on pretext, Mr. Lloyd can't establish a prima facie case of discrimination.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS the defendants' motion for summary judgment [Doc. No. 35]. The Clerk shall enter judgment accordingly.

SO ORDERED.

ENTERED: May 29, 2018.

/s/ Robert L. Miller, Jr.
Judge
United States District Court